■ JAMES MOREY, Respondent, v SECURITY MUTUAL INSURANCE COMPANY, Appellant. [666 NYS2d 319] —Crew III, J. Appeal from a judgment of the Supreme Court (Dier, J.), entered July 10, 1996 in Warren County, upon a decision of the court in favor of plaintiff.

Plaintiff is the owner of certain real property located in the Town of Queensbury, Warren County. On December 5, 1993, a tree fell on a garage located on plaintiff's property causing

damage to the structure.[1] Prior thereto, plaintiff had purchased an insurance policy from defendant for the period September 5, 1993 to September 5, 1996 covering plaintiff's residence and related private structures located on the premises. Following the accident, plaintiff submitted a claim under the policy to defendant, which defendant denied apparently upon the basis that the garage was designed or used for a business purpose and, hence, fell within an exclusionary provision of the policy. Plaintiff thereafter commenced this action and, following a nonjury trial, Supreme Court found in favor of plaintiff and awarded damages in the stipulated sum of $2,642. This appeal by defendant ensued.

"In a nonjury case such as this, our inquiry is not limited to whether the trial court's findings were supported by credible evidence. Rather, if it appears on all the credible evidence that a finding different from that of the trial court would not have been unreasonable, we must weigh the probative force of the conflicting evidence and the relative strength of conflicting inferences that may be drawn therefrom, and then grant the judgment which upon the evidence should have been granted by the trial court" (*Kandrach v State of New York*, 188 AD2d 910, 912-913). Applying this standard to the matter before us, we are of the view that Supreme Court erred in failing to conclude that the subject loss fell within an exclusionary provision contained in the policy.

In interpreting a contract of insurance, clear and unambiguous provisions must be given their plain and ordinary meaning (*see generally, State of New York v Capital Mut. Ins. Co.*, 213 AD2d 888, 890, *lv denied* 86 NY2d 702), and a court should neither strain to find an ambiguity where the words employed have a definite and precise meaning nor create policy terms by implication to rewrite the contract of insurance (*see, Flynn v Timms*, 199 AD2d 873, 874). Insofar as is relevant to this appeal, the policy at issue provided coverage for "related private structures on the insured premises which [were] not attached to [the insured's] residence". This coverage did not, however, extend to "structures designed or used for business", which, in turn, was defined as "a trade, profession, or other occupation including farming, all whether full or part time". The subject

---

1. At the time of the accident, plaintiff was out of State and another individual, Roger Smith, was "keeping an eye" on the garage for plaintiff.

exclusion did not apply to "structures rented, held for rental or otherwise used solely for private garage purposes".[2]

Although we have no quarrel with Supreme Court's conclusion that the garage in question was not being *used* for business at the time of the subject loss, we are of the view that the record as a whole compels a finding that the garage indeed was *designed* for business. To that end, while the policy does not appear to define the term "designed", such term is commonly understood by the " 'average [person] on the street' " (*Venigalla v Penn Mut. Ins. Co.*, 130 AD2d 974, 975, *lv dismissed* 70 NY2d 747, quoting *Lachs v Fidelity & Cas. Co.*, 306 NY 357, 364) to mean "made or done intentionally; intended; planned" (Random House Dictionary of the English Language 539 [unabridged 2d ed 1987]).[3]

Here, it is undisputed that the subject garage, which appears to be constructed of cinder blocks, measured approximately 30 feet by 50 feet and had two 14-feet high overhead doors. The interior of the garage, which plaintiff testified was heated and the photographs depict as well lit, contained an oil or grease pit and had a chain hoist with a pulley secured to one of the overhead steel I-beams. Thus, even rejecting, as Supreme Court plainly did, the testimony of the adjuster, who testified that the garage appeared to be a heavy truck storage and repair facility, plaintiff's own proof as to the physical characteristics of the garage is uncontroverted. Accordingly, we have little choice but to conclude that the garage in question was designed for business.

Mikoll, J. P., Mercure, Casey and Yesawich Jr., JJ., concur. Ordered that the judgment is reversed, on the law, with costs, and complaint dismissed.

---

**2.** Although the adjuster who inspected the premises following the loss testified that Smith identified himself as plaintiff's tenant, both Smith and plaintiff testified that Smith was not paying rent and Supreme Court apparently credited their testimony in this regard.

**3.** Notably, plaintiff does not argue on appeal that the language contained in the exclusionary clause is ambiguous (*compare, Boggs v Commercial Mut. Ins. Co.*, 220 AD2d 973).